UNITED STATES of America, Plaintiff,

v.

CLINTON CAPITAL
CORPORATION, Defendant.

No. 90 Civ. 5764 (RPP).

United States District Court,
S.D. New York.

Oct. 24, 1990.

Otto Obermaier, U.S. Atty. by G. Elaine Wood, Asst. U.S. Atty., S.D.N.Y., New York City, Small Business Administration by Kathleen E. Burtschi, Trial Atty., Mark K. Stephens, Sp. Asst. to General Counsel, Washington, D.C., for plaintiff.

Newman Tannenbaum Helpern Syracuse & Hirschtritt by Vincent J. Syracuse, New York City, for defendant.

OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

On September 7, 1990, the United States of America ("the Government") on behalf of the Small Business Administration ("SBA") commenced this action against Clinton Capital Corporation ("Clinton"), a small business investment company ("SBIC") under Section 301 of the Small Business Investment Act, 15 U.S.C. § 661 *et seq.*, claiming jurisdiction pursuant to 28 U.S.C. § 1345, 15 U.S.C. § 634(b)(1) and 15 U.S.C. § 687d. Section 687d relates to controlling conflicts of interest detrimental to small business concerns and small business investment companies and the adoption of regulations by the SBA to govern conflict transactions by those entities. Clinton, the complaint alleges, has been in default to the SBA for over a year in connection with $35,000,000 of subordinated debentures purchased by the SBA between August 1981 and September 1988. As of June 15, 1990, Clinton owed the SBA $4,572,591.25 in interest. On August 31, 1990 the SBA gave Clinton written notice pursuant to 13 C.F.R. 107.203(b)(1)(i) and 107.203(b)(1)(iii) accelerating Clinton's indebtedness and declaring all principal and accrued interest on the debentures immediately due and payable.

This action was commenced seven days later requesting relief of this Court pursuant to 15 U.S.C. § 687c(b). This relief was requested as follows:

"Pursuant to section 687(c)(a) of the Act, whenever, in the judgment of the SBA, a licensee has engaged in or is about to engage in any acts or practices which constitute or will constitute a violation of the Act, or of any rule or regulation promulgated under the Act, the SBA may make application for an injunction to the appropriate United States District Court, and such Court shall have jurisdiction of such action and grant a permanent or temporary injunction, or other such relief without bond, upon a showing that such licensee has engaged or is about to engage in any such acts or practices. In such a proceeding the

**232**

Court may take exclusive jurisdiction of the licensee and its assets and may appoint a receiver for the assets under the direction of the Court. *See* 15 U.S.C. § 687c(b)."

Complaint ¶ 11.

The Complaint alleges that Clinton has violated 13 C.F.R. 107.23(b)(1)(i) and 107.906(a) by defaulting on its interest payments under the debentures and by failing to pay principal after acceleration of its debt by the SBA.

The Complaint requested (1) a preliminary and permanent injunction restraining Clinton, its officers, agents, employees and all other persons acting in concert with them from making any disbursements, or investing or encumbering any of its assets; (2) a declaratory judgment that Clinton was in violation of the Act and its regulations; (3) the appointment of a receiver designated as Harold Siegelaub Company, Inc. to liquidate Clinton's assets for its creditors and to pursue all claims against third parties; (4) a judgment against Clinton for $39,572,541.25 plus interest from June 15, 1990 accruing at the daily rate of $10,035.50; and (5) revocation of Clinton's license to operate as an SBIC.

On September 10, 1990, the parties presented the Court with a Stipulated Settlement, Consent of Judgment and a Consent Order to which were attached a Receiver's Agreement signed by Harold Siegelaub Company, Inc. ("Siegelaub") on September 6, 1990 and an agreement dated September 7, 1990 among the SBA, Citicorp North American, Inc. ("CNA") and Siegelaub controlling the conduct of the receivership. The Court signed the Consent Judgment but rejected the Consent Order.

Under the stipulated Consent Order, the SBA, Clinton and CNA agreed that Siegelaub would be receiver, that Clinton's officers would be paid at present rates, ascertained by Court inquiry to be $350,000, $200,000 and $100,000 annually to January 1, 1991, and that CNA had a valid and perfected first priority security interest in

Clinton's receivables and equipment in the amount of $54,456,646.20 and in over $700,000 of interest, fees and expenses to date.

The Court inquired as to the assets and liabilities of Siegelaub and was advised it had no assets and liabilities. In lieu thereof, Mr. and Mrs. Siegelaub, the owners of Siegelaub, submitted a financial statement submitted to Chase Manhattan Bank January 1, 1990 showing substantial real estate assets and very substantial real estate mortgages payable.[1]

On September 10, 1990, the Court explained to counsel for the parties that the Court preferred a person and not a corporation as a receiver so that personal integrity as well as individual financial resources of the receiver would be at risk, and that a corporation did not offer a court this degree of protection. The Court pointed out further that since it was being asked to take the ultimate responsibility for the assets of the receivership, the Court would prefer a person in whom the Court had confidence that the conduct of business affairs and examination of conflicts of interest encompassed in the complaint would be fully complied with.

The Court suggested as possibilities, without suggesting they would be approved, three names, one of whom was a former United States Attorney for the Southern District of New York by appointment of the then judges of this Court, one of whom was a former Assistant U.S. Attorney and Regional Commissioner for the Federal Trade Commission, and one of whom was Vice President of a leading commercial real estate broker. It also indicated other possibilities would, and should, be considered. Counsel for the Government and SBA asked for time to investigate the matter further and requested an adjournment, which the Court granted.

On October 16, the Court received a new Stipulated Settlement signed by the Government, the SBA, and Clinton consent-

---

1. The Harold Siegelaub Company, which had no assets or liabilities, was valued at $500,000 in these statements.

ing without further proceeding to the entry of an attached Consent Order.

The proposed Consent Order appointed R.G. Housing Advisors, Inc., 919 Third Avenue, New York, receiver, to be compensated at the rate of $25,000 a month. The proposed Consent Order requires the present officers of Clinton to be retained for thirty days, unless dismissed with cause, but requires severance payments for eight weeks at present salary levels ($350,000, $200,000 and $100,000, although these figures do not appear in the proposed Consent Order). Under the Consent Order the receiver is authorized to retain employees, agents, accountants and attorneys to effectuate the operation of the receivership, subject to an agreement attached as Exhibit B. Exhibit B is described in Paragraph 10 of the Consent Order is a proposed agreement[2] among SBA, CNA and the receiver. Exhibit B affirms that CNA has a valid and perfected priority security interest in all of Clinton's receivables and equipment and all proceeds thereof to the extent of $54,456,646.20 in principal, $1,032,645.14 in accrued unpaid interest and $49,000 in fees and expenses, on which interest and agents' fees are continuing to accrue at a per diem rate of $17,774.05 and $378.17, respectively. Exhibit B also affirms that the SBA's rights to receive payments for the receiver are subordinate to CNA's. Exhibit B then requires the receiver give notice to the SBA and CNA before the employment of any person or retention of any professional or agent, and does not permit the receiver to employ (1) executives of Clinton, (2) professionals if the proposed retention *under any circumstance* would require payment of fees in excess of $100,000 a year, *unless CNA and SBA approve.*[3]

Accompanying the proposed settlement were (1) the Government's memorandum in support of its application for appointment of a receiver, (2) an affidavit of Mark K. Stephens of the SBA, (3) a list of material creditors of Clinton, and (4) information about the proposed receiver, R.G. Housing Advisors, Inc., including an unaudited statement of assets and liabilities dated October 9, 1990, showing a modest net worth, to which is appended the statement:

"Management has elected to omit the statement of cash flows and all disclosure ordinarily required by generally accepted accounting principles. If the omitted disclosures were included in the Financial Statements, they might influence the users' conclusions about the Company's financial position. Accordingly, these Financial Statements are not designed for those who are not informed of such matters."

The statement also revealed that R.G. Housing Advisors, Inc. was incorporated in Delaware on January 16, 1990. There were also attached three letters of reference dated September 18 and 20, 1990, not with respect to R.G. Housing Advisors, Inc. but concerning its affiliate, Richman Group, and concerning Wilder Richman Corporation and Wilder Richman Management Corp., both of Elmsford, N.Y.

At a hearing on October 19, 1990 the Court again expressed doubt about the wisdom of appointing a corporation as receiver, reiterating that an individual in whom the Court would have confidence was preferable because the individual's personal reputation and financial well-being were at stake in the event of a failure in fiduciary responsibilities. It indicated a reluctance to appoint R.G. Housing Advisors, Inc., and suggested that the SBA consider asking the Court to appoint the SBA as receiver under 15 U.S.C. 687c(c). The SBA demurred, stating this was one of two of the largest SBA loan defaults in the country. The Court pressed further, pointing out that forty days had elapsed since

---

**2.** Paragraph 10 states, "Nothing in this order or in the Exhibits attached hereto shall be construed to be an abrogation of the absolute authority over the assets of Clinton or the receivership conferred upon the Receiver and this Court by the provision of 15 U.S.C. § 687c," but does not state a number of provisions as "subject to the Court's approval."

**3.** It remains unclear if such a person can be hired by the receiver if the receiver applies for and receives Court approval despite the lack of approval of CNA and SBA. Under such circumstances the Court's authority is not defined with sufficient clarity.

this application had been made and that further delay seemed inexcusable. The SBA responded that it was unable to get authority to respond to this suggestion and the matter was put over until 3:45 p.m. on Monday, October 22, 1990. Before the matter closed, the Court suggested that it could understand the SBA's concern about undertaking such a heavy responsibility, especially in view of Gramm–Rudman cutbacks, and suggested the best alternative might be to appoint the former United States Attorney whom the SBA had acknowledged as experienced and qualified, with the suggestion that he retain the Richman Group for the handling of distressed real estate.

On October 22 at 3:45 p.m. SBA suggested a wholly new receiver, Maxwell Rabb, of counsel to Stroock and Stroock and Lavan, attorneys for the Richman Group, the former adviser to President Eisenhower and envoy to the Vatican, and a man highly regarded by the Court. On inquiry his age was revealed as 80 years and his hourly rate was stated to be $350 an hour. The Court indicated its concern over both his health and rate of compensation and ascertained that SBA was unwilling to be appointed as receiver. At this point, Clinton expressed a concern, stating Stroock and Stroock and Lavan had acted as its counsel, but had been terminated and that a professional malpractice suit had been instituted in New York State Court by Clinton or its principal shareholder against Stroock and Stroock and Lavan. Under these circumstances, Clinton stated a preference for the former United States Attorney. The Court then indicated it would make that appointment, at which point the Government, the SBA and CNA's counsel objected. When the Court inquired as to why the SBA objected in view of their counsels' affidavit stating that the candidate was experienced and qualified, the SBA attorney stated he would stand on his affidavit. At this point, the Government and SBA, apparently at the urging of CNA's counsel, stated they were moving to withdraw the application for a receivership in view of the Court's expressed intention to appoint the former United States Attorney. The Court denied this application over the Government's objection. The Court has since determined from government counsel that the SBA position was taken because the SBA decided it could not work with the former United States Attorney.[4] The Court then stated that rather than rendering an order at that time, it would issue a written opinion on the Government's motion to withdraw its application for appointment of a receiver on October 23, 1990. For the reasons set forth below, the Government's motion is denied.

## DISCUSSION

The basis for the Court's denial of the Government's application to withdraw its request for the appointment of a receiver is that, a judgment having been entered against Clinton on September 10, 1990, it is the Court's prerogative to determine what relief requested in the complaint is appropriate under the circumstances. Furthermore, any further delay in the resolution of the management of Clinton during its insolvency is unwarranted. Indeed, too much time has elapsed already.

This matter involves the second largest SBA loan default in the country. The initial application to the Court was an ill-conceived attempt by CNA and the SBA to obtain Court approval of a predesignated receiver with limitations on its powers satisfactory to CNA and the SBA. The Government's counsel had itself made no investigation of the receiver's assets or liabilities. Only upon inquiry of the Court were the lack of assets of the proposed receiver revealed and the financial statements of its principals furnished; only upon the Court's inquiry of a principal officer of Clinton were the stipulated salaries of its officers revealed. In this Court's view, such a submission is inexcusable.

---

**4.** The Court sees no justification for the SBA's unwillingness to work with the former United States Attorney, who, in the Court's view, is apt to conduct a less expensive receivership. The government counsel, however, did on October 23, 1990, affirm to the Court that the SBA reached its judgments concerning the selection of the receiver entirely independently of CNA.

Because the Court has no independent resources, the Court relies on the Government for independent investigation and advice when the Government makes these types of applications.

The second submission cured many of the defects of the first submission but, through unskillful draftsmanship, still did not make clear the Court's position as ultimately responsible for the manner in which the receiver conducts the receivership and its outcome. Nor did it make clear the receiver's position as an officer of the Court and answerable solely to it. Furthermore, pre-arranged deals in which the receiver must agree to CNA's requirements before having its name put forward at all are not consistent with a court's control over the receipt and disposition of assets of the receivership estate.[5] Further, a newly-formed subchapter S corporation with unaudited financials containing a statement as is recorded in this opinion does not inspire Court confidence as a potential receiver.

Nevertheless, in view of the inordinate amount of time that has elapsed and the importance of a close working relationship between the SBA and the receiver and because of the Court's confidence in Mr. Rabb's character and integrity, the Court will appoint Maxwell Rabb as receiver of Clinton, subject to amended terms of the proposed Consent Order which the Court will formulate.

IT IS SO ORDERED.

---

**5.** CNA is not a party to this action and its endeavors to have its own receiver appointed are not well received. The Government's repeated acquiescence in proposals the Court has indicated will not pass muster for a Court appointment is inexplicable. The Court must consider the possibility that some fault or error in this matter may be with CNA. Its insistence on control of a Court appointment heightens the Court's sensitivity to that possibility.